Ladies and gentlemen, we are here this morning to hear argument in the case of Savory v. Cannon. Mr. Art. Good morning, Your Honors, and may it please the Court. Supreme Court precedents dictate the result in this appeal. As the panel correctly recognized, Heck directs that Section 1983 damages claims that impugn the validity of a state criminal conviction accrue only once the conviction has been set aside. Since the panel's decision, the Supreme Court in McDonough has reiterated and expanded Heck's rule, holding that Section 1983 claims must await favorable termination whenever the suit impugns a state criminal proceeding or its resulting judgments. McDonough says only once the criminal proceeding ends in the defendant's favor or a resulting conviction has been invalidated does the statute of limitations begin to run. That rule controls the result here. Savory's claims each impugn the validity of his state criminal convictions and the proceedings that gave rise to them. Savory did not obtain a favorable termination until his conviction was set aside by his pardon in 2015. Has any federal court gone so far as to allot any defendant to file a Section 1983 claim merely because that defendant has been released from custody and hobbyist is no longer available? The answer is no, as far as I can tell, and the defendants certainly have not cited such a case in this court, and no question that the precedents of the Supreme Court make perfectly clear that such a suit cannot be filed. This court's analysis should begin and end with the express language of majority opinions of the U.S. Supreme Court. The court repeatedly has held that Section 1983 suits cannot be used to impugn extant convictions. Heck said to recover damages for an unconstitutional conviction or sentence, the Section 1983 plaintiff must show that the conviction or sentence has been set aside on direct appeal, expunged by executive order, as was the case here, set aside by a state tribunal, or called into question by a writ of habeas corpus. Release from custody is not in that list of events that caused the claims to accrue. And heck— Let me ask you this, Mr. Arndt. Once somebody is released from custody, though, the concern about conflicting judgments, somebody who's in custody pursuant to a state conviction versus somebody who's not, evaporates. So where's the conflict at that point? I don't think it evaporates at all, Chief Judge Wood. I think if we look at the federal habeas regime in its statutory form, what Congress has determined is that the general default rule of no federal interference with state judgments gives way in a very limited circumstance, and that's when somebody is in custody. For a long time, the lower federal courts had no power at all to issue writs to examine state judgments. In 1867, they got that power to a very limited extent, and since then, that's been the only way to set aside a conviction. A suit under Section 1983, the Supreme Court recognized in Allen v. McCurry, is not a substitute for a federal writ of habeas corpus. And so to allow a Section 1983 suit with plenary review, with a preponderance of the evidence standard, every time a criminal is released from prison, would completely upend the federal habeas regime. And it would do great offense to state functions. The defendants take the position that state interests suddenly evaporate after release from custody. But the opposite is true. What the Supreme Court recognized in cases like Calderon v. Thomas is that when the federal habeas proceeding comes to an end, the state is entitled to a presumption that its judgment is going to be final. That finality is important to the state's sovereign interest in administering their own criminal law. It's essential to retribution and to deterrence in criminal law. It's also a principle of the law of preclusion, and Heck is not just concerned about habeas exclusivity. As I read the case, there are two rationales. One is habeas exclusivity. The other derives from the common law, tort law, of malicious prosecution that requires as an element of the claim that there be a favorable termination of the criminal proceeding. And that tort principle derives from the law of preclusion, which is concerned about discordant judgments. I absolutely agree with that, Judge Sykes. So what the Supreme Court has confirmed again in McDonough is when it comes to damages suits that might impugn a criminal proceeding or a resulting judgment, the accrual rule is determined by analogy to common law of torts because the chief principle— Two rules of Heck. There's a Heck bar, which is a rule of preclusion, and there's the Heck rule of deferred accrual. So there are two principles at play in Heck, and the difficulty in application that we've those two rules. The rule of preclusion, the Heck bar, is applied defensively to avoid the suit, to get it kicked. The rule of deferred accrual is used offensively by a plaintiff to overcome a statute of limitations argument. Yes, Judge, and I would say that the latter rule, the rule of deferred accrual, is a rule that is designed to avoid the preclusion issues that would otherwise happen. It implements the Heck bar. Absolutely. And so if you're in a situation where you're designing an accrual rule, the Supreme Court has said do it by analogy to common law torts, and malicious prosecution is obviously the most analogous common law tort to each and every one of Savory's claims. But if you're in that situation, you can't design an accrual rule that requires the filing of a large swath of suits that are dead on arrival in federal court because of preclusion principles that Allen against McCurry in 1738 would otherwise apply. And so even if this court doesn't take the express language of Supreme Court decisions, apply them and say Savory's suit was barred until he achieved favorable termination of his criminal case, the Supreme Court's method for determining accrual rules by analogy to common law torts leads to that result anyway. But what about the situation that Justice Souter was worried about? Once someone has been released from custody and they have no option of habeas to challenge the conviction, but yet no recourse to 1983 if there's a favorable termination requirement. So I suppose I have two responses to that. The first response is that that really is an issue for Congress and not an issue for the courts designing accrual rules in civil tort cases. But even if there was an opportunity to devise an exception to heck in narrow circumstances where collateral relief was impossible. And I think that the Supreme Court concurring opinions and all of this court's cases that in dicta have mentioned such an exception are really concerned with that situation where there never was the opportunity to receive any kind of collateral review in state or federal court. Savory doesn't fit that box anyway. So if there's a case that comes along to create a Souter type exception, it's not this one. Savory obviously had ample opportunity in both federal and state court to pursue post-conviction remedies. And even once those were exhausted, he had state remedies still available to him. And as this court observed in Nance and the Mack case, if you have an opportunity to seek Why would having an opportunity to seek relief matter if footnote 10 of heck is controlling? What role does opportunity play? None, your honor. None. And what role, if footnote 10 is controlling, what role would it play that the evidence of misconduct didn't come to light until after the defendant was released from prison? None, your honor. None. And so the upshot of that would be that persons who don't get definitive proof of wrongdoing until after they're out of prison just can never bring 1983 suits unless they manage to get a pardon from the governor. Or a secure. And if they don't, most people don't. They're just, their goose is cooked. Yes, your honor. And that is the system. Well, wait a minute, Mr. Art. I was looking, another possibility is relief from a state tribunal authorized to give this relief. And in Illinois, at least, as I read the Post-Conviction Act, there is no time limitation on a petition advancing a claim of actual innocence. So it does seem to me that people may not be exclusively relying on a governor's good state law. I'm not talking about federal law now, but under state law, there may be an avenue. Surely. And so in Illinois, if you're in custody, you can file a successive post-conviction petition under that act. You can also file under the Civil Act that offers relief from judgments, what we call a 2-1401 petition in the case, for example, of newly discovered evidence. So I don't mean to suggest that these people are without a remedy entirely. States may provide all kinds of remedies. Well, and the federal court can provide remedies as well for the circumstances that we've just been discussing. Limitations law has equitable exceptions, equitable tolling for cases in which the defendants are responsible for suppressing the information that would have led to a timely claim. And the law of preclusion also has a fraud exception. If the judgment that is having, giving, would otherwise have preclusive effect in the federal action was obtained by fraud, a Brady violation, for example, or some other suppression of evidence, then that would overcome the heck bar. It might. Well, Judge Sykes, and I think the point is this. When we're examining what a cruel rule should apply in this case, the exceptions and whether people can seek relief from a judgment under state law or federal law in particular circumstances are all well and good. But the idea, Justice Souter's idea in concurrence in Heck and in Spencer, that there is this all-purpose exception has not won the day. The Supreme Court majority in Heck and in Spencer, and in fact, the debate continues in Wallace, has said that's not the way that we determine a cruel rules. Well, doesn't the Supreme Court in Heck say the notion that for every wrong there is a remedy, to use a common law way of putting it, isn't right? Right. And the Supreme Court has said that not only in Heck, but in Allen against McCurry and countless other cases. When it comes to the... Isn't it strange for you to be standing here arguing that position, though? The point is made in the briefs. I don't think so at all, Chief Judge Wood, and here's the reason. Meritorious civil rights claims that come to federal court come after the favorable termination requirement with some merit to them, right? That's what the favorable termination requirement really does, it says, there's really two ways that you can come to federal court and seek relief. Way number one is through the federal habeas regime and those tight channels while you're in custody. And way number two is when you've done something in some other court to show that your suit has a lot of merit. When somebody has their suit terminated favorably, that means it's a good suit to pursue in federal court. And of course, as we're pursuing federal civil rights claims, that's what we're looking for. On the flip side, preclusion and abstention would cause problems across the board if these suits were filed upon release. If Sabry had filed his suit upon release, it would have had to be dismissed for lack of jurisdiction. He would have been saying to this court as the defendant coming from a state court with a judgment, a final judgment against him, please put my wrongful conviction to the side or let me impugn it to an extent that this court is recognized in Hill against Murphy and the court in Heck recognized is tantamount to a collateral attack. If it wasn't dismissed for lack of jurisdiction, all of the claims would be issued, all of his claims that he would bring in this suit would either be issue or claim precluded. The Supreme Court in Allen said issued preclusion of Illinois applies in this case. In MiGRA, it said that the claim preclusion principles would apply. So the suit would be dead on arrival. And so that's another reason that we're arguing against the rule that wouldn't require favorable termination. I also think it's important to point out that the defendant's rule undermines every single principle that animates the Heck-McDonough case line. So McDonough reminds that there are four related principles at stake when designing an accrual rule in these cases, avoiding conflicting state and federal judgments and parallel proceedings, preventing collateral attacks on a state judgment using a civil suit, ensuring the finality of state criminal judgments and proceedings, and protecting the exclusive realm of habeas corpus. The favorable termination requirement promotes every single one of those things and the defendant's If Savory had filed his suit upon release, there would be a possibility of conflicting federal and state judgments, putting aside the preclusion and abstention problems I just talked about. There would also be a suit that is tantamount to a collateral attack on his conviction. McDonough affirmed that such an attack is untenable, full stop. If he had filed his suit upon release, he would have undermined the finality of state and the states are entitled to a presumption that their judgments are final as soon as the mandate issues in the federal habeas case. How important is it that consequences from the criminal judgment survive beyond service of a sentence? I mean, it's important to the state's interest and I mean, it's part of the state's interest in the finality of its judgments, right? The state's interest in finality promotes its ability to administer its criminal law and make it have effect and mean it when it says, you're convicted of this crime. But then the states variously attach all kinds of civil disabilities to a person who has an outstanding criminal judgment. And to say that a litigant could come to federal court with that valid state judgment in place and say to the federal court, please re-examine this judgment and re-examine whether the state should be able to encumber me this way is completely offensive to principles of comedy and federalism that have guided this. I'm a little puzzled by your reliance on judgment. Under 1738, the force of the state's judgment is a matter of state rather than federal law. So I assume no matter what the Heck Doctrine does, one has to show that as a matter of Illinois law, it's permissible to bring this suit consistent with the criminal judgment. But why is that a matter that is related to Heck? So Heck is federal law. Under 1738, the effect of the state judgment is a matter of state law. Right. So the effect of the state judgment doesn't dictate when the claim should accrue as a matter of federal law. The state judgment is important to the extent that in an accrual rule that would require a filing while there was a state judgment extant, which we think contradicts Heck completely as a matter of federal law. It's important just for... I could imagine a rule that says if there is a state judgment, which as a matter of be disturbed, then the claim does not accrue as a matter of federal law. But my question is, why would one incorporate the validity of the state judgment independently into federal law rather than leaving it as a matter of state law under 1738? I think it is left as a matter of state law, and I didn't mean to confuse the issue, Judge Easterbrook. I think that as a matter of federal law, the Heck Doctrine is determined simply by the way the Supreme Court has set out, namely the analogy to common law torts, and ensuring that a federal civil suit is never used to collaterally attack an extant state judgment. But it's up to the state to decide if it's extant. Except to the extent that state law allows that attack on a judgment, because then it's not dispositive. Right. Heck says we have to take account of the rule that you can't use 1983 to contest ongoing custody. And you can't use 1983 to contest the state judgment. But if state law itself allows the state judgment to be contested, what is left for federal law? What remaining role is there for federal law? Well, I mean, the federal accrual principle still must be based on the Supreme Court's method of determining those accrual rules. So I don't think that the federal rule in any circumstance can turn on how 1738 says a state rule of preclusion should be applied. The federal rule— But suppose state law—I mean, just take an example. Suppose state law says as soon as a prisoner walks out the prison door, he is free to file a damages action contesting the validity of that conviction. What effect does that have on federal law? Well, I— Right? There's no longer a rule of preclusion barring an attack on the judgment. So I think as a matter of federal law and federal prerogatives, that kind of challenge on an extant judgment is always preserved by statute and by a long history to federal habeas corpus. So there wouldn't be room—I mean, I think what— No, you may say Illinois doesn't have that principle, but if a state has a principle that says once a prison term ends, the former prisoner is free to litigate the validity of the conviction, then how does one say that bringing a 1983 suit is an improper collateral attack on the judgment? Under 1738, it's something the state allows. Well I suppose— But let me also throw in—this is, again, the intersection between state law and federal law, and if the state wants to be more generous about collateral attacks, then perhaps the state is entirely free to do that if the Supreme Court said, heck, we don't care when the state is being attackable, we just are saying that we're not going to entertain, we're not going to say the federal claim accrues until it's really been set aside by the state. In other words, we want a higher bar than the state. Is there any reason that system couldn't work? No, I mean, I think that makes perfect sense. The rule that Judge Easterbrook is describing is essentially a rule that would set aside the judgment upon release from custody. So thought of that way, saying that this state judgment no longer has any preclusive effect as a matter of state law is essentially the same thing as saying, you know, we're going to vacate the conviction of every person who walks out of prison, and in that circumstance, I don't think that heck would have a problem. No, it's not that clear, but the reason I'm bringing this up is our holding in Sanchez against Chicago, which we certainly need to be thinking about, saying that the way heck works depends on the state rule of preclusion, and we need to be thinking about that as a So here's the way that I read Sanchez, and I think that Sanchez was read this way in this court's recent decision in Green against Junius. Sanchez is a Fourth Amendment claim as a matter of federal law governed by Wallace against Cato that goes to trial, and the question is, what jury instruction should be given so that this plaintiff doesn't contest the validity of the judgment? And I think there it should be limited just to a question of preclusion. If the claim isn't barred by heck because it's governed by Wallace, then the claim can proceed, and the jury instructions given at trial under Sanchez and Gilbert and Green are all just jury instructions that are about preclusion. Forget about heck. And I think a lot of this court's cases that are cited by the defendants are cases where the issue really is whether heck applies at all, not whether there's an exception to heck. And I think that that's where this court's cases, to the extent that there's some dicta in the cases that might get cleaned up, have gone a tiny bit astray. This court's cases are all, as far as their holdings are concerned, completely consistent with heck and McDonough. Mr. Hart, could I just ask you whether you've taken the position, I think, throughout this litigation that, in essence, accrual rules ought to be fairly clear and easy to follow. Would it be, in your view, a manageable rule of law to decide that the federal rule of law could be shown a successful challenge to claim or issue preclusion? Would that be a practical and manageable rule? Not at all, Judge Hamilton. I think that the only real manageable rule in this context is the favorable termination requirement. I mean, I think that's why the Supreme Court in heck and in Wallace and in McDonough has opted for that requirement, because it keeps the coordination of state and federal claims completely simple and makes sure that federal claims, frankly, state claims, frankly, rarely come to federal court. And when they come, they come in good stead. At bottom, our view is that the defendant's approach to this case is deeply flawed. They spend a lot of time arguing that the relevant case line simply doesn't apply. That's wrong. But if it wasn't wrong, they're not pointing to any real authority that supports them. They have to explain why this release from custody rule is consistent with heck and McDonough and the rest of the cases in the line. They have to explain how that rule can possibly be fashioned based on the Supreme Court's repeated admonition that accrual rules are determined by analogy to common law torts. You cannot get a rule that a claim accrues upon release from custody if you're using analogy to common law torts, unless you make the analogy to the wrong common law tort. The only common law tort that required release from custody as an accrual proposition is false imprisonment. And that's the claim at issue in Wallace against Cato and most certainly not the claim at issue in this case. And finally- And also Sanchez. That's what distinguishes Sanchez from this case. It wasn't a wrongful conviction claim. It was a wrongful arrest claim and an excessive force in the course of the arrest claim. Absolutely, Judge Sykes. And that principle of Wallace against Cato survives heck and McDonough. So ordinary preclusion rules under state law apply there. Absolutely. Under the full faith and credit, not heck. Absolutely, Erin. Mr. Art, can you go back to a point you made a minute ago, and that is you said looking at our case law, you think a lot of our holdings would remain intact, consistent with the propositions that you're advancing today. A lot of those cases, as you know, arise in the prison disciplinary context. And do I understand your position right to be, or to be that heck is really neither here nor there so long as the 1983 plaintiff is not challenging their underlying conviction or seeking a restoration of good time credits that would affect their time in custody? Absolutely. So the 1983 plaintiff that is, you know, seeking money damages for, you know, some type of disciplinary measure that was imposed. I was sent to solitary confinement because I exercise free speech rights or because of my race or something like that. Say heck's just N.A. Absolutely. And I think this court said that in the Simpson case. What these cases that involve challenges to conditions of confinement say are we don't need to consider heck at all because it doesn't apply because you're not seeking relief from a judgment or speedier release from custody. And the Supreme Court affirmed that proposition in Muhammad. And so most of this court's cases fall in that category. There are a couple cases that fall in the category of challenging the length of custody where this court has said once released from custody, you may file that suit so long as you were not attacking a state judgment also. But do you think, though, in keeping with your comments here, can you identify any case along along the lines of the rule that you're advancing that would require overruling? No, I think that all of this court's holdings are consistent with the framework that that we have set out. And that framework is threefold. First, if you are challenging a state judgment, you must wait until the state judgment is set aside. And Wallace, sorry, McDonough extends that into the pretrial period. Two, if you're challenging custody only but not a judgment, you have to wait till the custody has come to an end. And three, if you're not challenging a judgment or custody, heck has absolutely no role to play. And if there are no further questions, I'll reserve the remainder. Mr. what about Byrd? Would that survive? So the holding of Byrd is that heck bars the suit. I think that the discussion in Byrd about there being an exception to heck and an exception to the exception shouldn't survive for a number of reasons. Most prominently, by saying there's an exception to heck and then an exception to that exception for somebody who's not exhausted post-conviction remedies thoroughly enough, that's in serious tension with the Supreme Court's admonition as recently as this term that there's no exhaustion requirement for Section 1983. So that aspect of Byrd certainly couldn't survive. And I think that the fact that Byrd said perhaps there's an exception to heck and an exception where you haven't done enough in state court shows that the first exception isn't really grounded on any legal principle that has a lot of force. Thank you, Your Honor. Thank you very much, Mr. Ard. Mr. Soros. May it please the Court, good morning, Your Honors. One thing we agree on is that the issue is whether heck applies at all in this context. And we believe that lifting the heck bar at the time of a prisoner's release from custody is the best and the only way to accommodate the Supreme Court's prohibition on exhaustion of state remedies with limiting principles of federalism and comedy while still at least giving some effect to a putative defendant's right to rely upon an already significantly extended statute of limitations in reverse conviction cases. You know, in McDonough, the Supreme Court expressly rejects the workarounds, it seems to me, that you suggest we use here, namely filing and then staying suits. And ad hoc absentations by district courts finding that these solutions would be impractical. Could you address the practical effects of forcing convicted defendants to file Section 1983 suits within two years of the release, whether or not they have obtained the evidence of innocence that would help them overcome Rae's judicata, Rooker-Feldman, and Younger abstention? Certainly, Your Honor. McDonough, much different case than here. And you know, context matters. And in this case, in this matter, context is everything. So McDonough was a case where the issue was whether or not a cause of action would accrue during the pendency of a criminal prosecution. And the likelihood of interference with that prosecution is likely at its height there. I mean, that is something that is always done. Criminal defendants routinely file Section 1983 cases against pending criminal prosecutions, and defense lawyers are always seeking to stay those cases. So it made perfect sense for the Supreme Court to say in McDonough, we're not going to leave that to the discretionary decisions of district courts. They have to decide in every case, well, are we going to stay the case completely? Are we going to stay it at all? Are we going to stay part of it? That's not the case here. But that's not what the Supreme Court said in McDonough. That's the problem. What the Supreme Court said in McDonough was that the critical fact was McDonough's acquittal, which is part of the heck list. And a simple rule like that, I mean, I'm very wary of statute of limitation rules that require extensive examination of factual records. Both defendants and plaintiffs ought to have some clarity in this respect. And the McDonough court is absolutely clear that the critical fact was the acquittal. It wasn't younger deference to ongoing state court proceedings. That sort of takes care of itself when you say you have to wait until there's acquittal. Certainly, in the context of a case where the issue is whether or not the cause of action should accrue against a pending prosecution. It's not difficult to imagine all the problems with the plaintiff in such a case getting a judgment under Section 1983, then walking back into the criminal court and saying, I have this judgment. This is entitled to- And that's why you wait for a favorable disposition. And I just don't see, I mean, actually another thing that worries me about your position is I do see very clear language in heck itself saying our rule does not depend on whether the defendant has subsequently been released. And I'm very wary of piecing together this vote and that vote from people's concurring opinions when the Supreme Court repeatedly tells us that it's not our job to do that. And we're not asking this court to do that. We think that the suitor's- Most of your briefing does. Your briefing counts through Justice Souter and who's with him and Spencer against Kemna and who shifts around. Certainly, before the panel, we did have the position that this, that the panel was bound by a series of decisions from different panels in this court which drew on Justice Souter's concurrence. At this point, I think our argument to this court is that Justice Souter's concurrence makes perfect sense and it's the only- Except that it wasn't accepted. Right. By the majority. That's the problem. But it's also the only way that the court can accommodate the Supreme Court's prohibition on exhaustion of administrative remedies with heck. I don't see that. What is wrong, other than your championing the rights of potential criminal defendants who were done wrong by the system to bring a lawsuit after they've finished serving their sentence. I mean, it's very admirable for you to be worried about them. But in a system where we have to have finality, why don't we just let the state courts do their thing? And if somebody can amass the kind of evidence that would persuade either a state court or a governor or perhaps a federal court under some equitable tolling principle to grant relief and set aside the state conviction, then and only then is it really ripe to think about whether the conviction was procured in a way that violated the Constitution. Because that defies exhaustion of state remedies. Why? That does exhaust state remedies. It means that the state criminal conviction is left alone. It means that you have found some legitimate way to attack the state judgment and you got rid of it. And the Supreme Court has said in Monroe and Patsy that the courts aren't permitted to require the states to, excuse me, to require exhaustion of administrative remedies. But the thing is, when does the claim accrue that your treatment by the police, your prosecution, your right to exculpatory evidence, whatever it happens to be, your right not to have fabricated, when does that claim accrue? That's not exhaustion so much as when do we actually have an actionable claim. Judge, the claim accrues upon release. The problem with Mr. Savery. Why? You can say that all day, but why? Because the other potential time is when that judgment has been found not to be binding anymore. I don't agree with that because under those circumstances, well, under those circumstances what you're doing is deferring to the states forever. There is no federal remedy. Once somebody is released, their cause of action may accrue. Now, in this particular case, Mr. Savery. What do you mean? I'm saying that Mr. Savery's case here would have been barred most likely by res judicata or collateral estoppel, but that is as it should be. All of his claims were rejected. Right, and then once the judgment is gone, maybe his claims have no merit. I have no idea. I mean, they got cut off on this limitations point, so we are certainly not here to adjudicate his claims. But I don't see anything to be gained. Actually, I would actually take some exception to the idea that there are such broad equitable exceptions to claim and issue preclusion. That's going to depend on the law of the state. Some states, particularly with claim preclusion, are less likely to do that. I think they're narrow, Judge. Well, in other words, you want people to clutter up the courts with a lot of cases, challenging convictions, so that the district courts then have to look at them and evaluate Illinois' or Indiana's or Nebraska's or somebody else's claim preclusion rules, and only then dismiss them? It's never been an issue, Judge. There's never been an issue with floodgates in cases filed by released prisoners. Because heck has been the rule. That's why there's not a floodgates issue. Before heck, after heck, after this court's decisions in DeWalt, there's never been an issue. No one has ever raised an issue about released prisoners filing, filling up the courts with lawsuits. And there's a good reason for it, because race judicata and collateral estoppel do bar those claims. So unless somebody has a really good exception, like let's say, Bell v. City of Milwaukee, a shooting case, but a good example, where someone finds evidence, new evidence, police officer admits that I planted evidence 20 years ago, that claim is supposed to be able to be brought in federal court. But under the plaintiff's view and the panel's view, that case could never be brought in federal court unless the plaintiff first got the governor to pass on the sufficiency of the evidence that he presented. It's not just the governor. You say that, but as I pointed out in Mr. Art's time, many states, Illinois included, have their own state post-conviction remedies. Some of those state post-conviction remedies are, in fact, more generous than 2254 in that they allow for an actual innocence, a freestanding actual innocence claim. It's up to the state. But if the state has an avenue available, somebody is not left only to persuade a governor. They can certainly try a state process. In Illinois, they can file a 1401 petition. I know. That's my point. And if they lose, then they can start asking the governor every single year in a secret process. But if they lose at some point, not everybody has a meritorious claim. If there's this avenue available, they've tried it. They presented their issues. They got the DNA testing. The Illinois courts are pretty generous about allowing that. But then what is the principled basis on which to say there is never federal review? See, in every other case in- Until the conviction has been set aside. Well, in Heck and in McDonough, you're talking about cases that are within the domain of habeas corpus. If everything doesn't work out in the state, they at least get a temp to bring their case in federal court. Now, it may well be rejected for some of the preclusion doctrines we've talked about. But under what the panel did here and what the plaintiffs are arguing, there's never, ever an opportunity to review the governor's pardon or the 1401 petition. And that directly- If it's negative, you're right. And I agree with you that under the view that the plaintiff is urging, that the appellant is urging, there are going to be some cases that are too late for habeas corpus because the person fails the in-custody requirement and that do not have the ability to go forward under 1983 because the conviction is extant. Absolutely. That's discussed in Heck. The Supreme Court said, so be it. So why can we say differently? Because we don't think the Supreme Court said that. We don't think the Supreme Court could say that without overruling the doctrine of exhaustion of state remedies. The Supreme Court did say it. They could say it. The court made no connection to exhaustion of state remedies. It was focusing on a pool of claims. Because of the fact that the defendant- Just overlooked the fact that they were unfamiliar with Patsy and the key doctrines of 1983 law? Not at all, Judge. The defendant was in custody. So their habeas corpus was available if the state remedies didn't work out. That exhaustion is required by the habeas corpus statute. So we know that there's habeas corpus that has to be exhausted for people who are in custody or for people like in McDonough who are trying to challenge pending cases in which their claims eventually would either end up in habeas corpus or if they're acquitted, then they could sue under section 1983. But once that person is released and they're not in custody and they can't file habeas corpus, what this court wouldn't be saying is that that individual has no remedy under federal law. And that was the whole purpose of section 1983 to begin with. So if the court's going to limit that, what the Supreme Court said in Patsy and in Monroe versus Pape is that Congress has to do that. Am I remembering correctly that Patsy was not cited in your original brief, was it? We did cite Patsy below, Judge. I can probably tell you what page in a minute. But we cited both. Oh, I think we cited Patsy before the panel. I don't know if we cited it again. I don't see it in your red brief. I know we cited Monroe. And the principle is this. Actually, no, you didn't. I'm looking at your table of authorities.  seems fairly novel. I know we've cited it before the court. Well, we're looking for the citation and the page number. The other more fundamental problem with your focus on exhaustion is that it ignores all the language in Heck itself, which makes favorable termination an element of the 1983 claim for wrongful conviction. Judge, it didn't. By analogy to the tort of malicious prosecution. It's an element of the claim. I disagree, Your Honor. It's not an element of the claim. Precisely what the opinion says. The plaintiff must prove favorable termination. That's an element of the claim. Disagree, Judge. That's for purposes of accrual. That's not an element of the claim. And in fact, in McDonough, the government asked the Supreme Court to make favorable termination an element of the claim. And the Supreme Court didn't do that. That's a far cry. The Brady claims and the fabrication claims, the coerced confession claims here, they do not, if they are filed without this Heck issue, require proof of favorable termination. Defense lawyers would probably like it if that were the case. It would make it more like malicious prosecution. What are you saying about footnote 10 and Heck? I mean, as Judge Sykes says, Heck does characterize this as an element of the claim. And footnote 10 takes on Justice Souter's point, which is your point, and affects it. Is that dicta? Oh, I think it is dicta. I think that both Justice Souter's concurrence is obvious. It has to be dicta. And I think that Justice Scalia's one-sentence response where he said that we think it would apply outside of custody has to be dicta. And of course, it's been treated by dicta by several courts throughout the country, including several times by this court, when the court has, by different panels in this court, which have recognized that custody is an exception. But in Heck, the court says declaratively, we hold that a 1983 plaintiff must prove, et cetera. I mean, how can that not be a characterization of what's required as an element of the 1983 claim? Because it is in the context of what the court identified as an effort to circumvent the exhaustion of remedies requirements of habeas corpus, which is not present when a person is released. So we do think that context is everything in this case, and that you can't analogize a case that was rendered in the context of somebody being in custody, where they had federal remedies ultimately available upon the exhaustion of state remedies, and a case where the person doesn't have any federal relief. The only federal remedy, the only one under these circumstances, for the most egregious kind of state misconduct you could ever imagine, would be a section 1983 claim, once the person is released. And I think the court should think. But is there any way, Mr. Soto said, a plaintiff could ever win that section 1983 without favorable termination of his underlying conviction? Sure he could. He would have issue preclusion, as you've already conceded in every case. And that's the point. Issue preclusion and res judicata. How does he win? Because if he came up with new evidence or some other, you know, res judicata and collateral estoppel are equity-based doctrines. They don't apply if justice requires that they don't apply. One of the best examples is a case where someone comes up with new evidence. You would have to ask what the state said about that. You've just said across the board they don't apply. But the states have elaborately developed rules of claim and issue preclusion, which actually are not willy-nilly subject to equitable exceptions, to my recollection. But every state's got its own rules. Here we're dealing with Illinois. But I would be careful about assuming that they're all meaningless. Res judicata and collateral estoppel are both broad doctrines, which are intended to be broad, to protect state judgments. But they do not apply. They are equity-based doctrines. And some of the exceptions are they don't apply if there wasn't a full and fair opportunity to be heard. That's one. And how could you possibly say that of Mr. Savory, who used many, many mechanisms to try to bring his claim? He certainly had an opportunity to be heard. Maybe nobody was listening. But he definitely had opportunities. Judge, to say that nobody was listening, all of the claims that he advances in this court, everything that allowed him to say the things he said in his complaint is because of this pardon. All of his claims were rejected or not raised before. Over 30 judges over the last 30 years in the state and federal system, two decisions by this court, one on a review of habeas corpus, one on review of a denial of DNA testing, over 30 judges have reviewed his claims and found that there was nothing there. Now, those are- You agreed that he would not- you would have been dead on arrival when he filed it under your accrual rules? Absolutely. And that's with respect to the claims arising from the second conviction. Because he did have a Miranda claim that was upheld on appeal from his first conviction. Conviction was overturned. He was retried and then convicted. So I do think that all of his claims from his second conviction would have been defeated. But again, that is how we believe it is supposed to be. That is how- but to say that we're I mean, he has, in fact, developed new evidence since the pardon, which makes this a different case. His complaint doesn't allege any new evidence, Judge. And before I say anything further about that, I want to address one final point. The way the discussion is kind of going, it suggests that heck was somehow supposed to be a doctrine that provides another opportunity for people to do kind of an end run around res judicata or collateral estoppel. But that's not the point of heck at all. There's no res judicata effect left of a judgment that has been set aside or otherwise disposed of. That's why the doctrines of preclusion don't come into play if you follow the heck rule as written by the Supreme Court in heck. And that's the problem with applying heck to a situation outside of custody. It permits an end run around res judicata and collateral estoppel in situations where it's supposed to apply. And Chief Judge Woods? Heck is supposed to apply if the conviction has been set aside by a competent authority in the state. So this conviction has never been set aside. Yes, it has. He got a pardon. And whether he's entitled to compensation in addition to that, he's done. He's pardoned. His conviction isn't on the books. Disagree, Your Honor. It was a general pardon. I know that. But I'm saying that doesn't mean that it wasn't a pardon. Your Honor, under Illinois law, the issuance of a general pardon, under this court's decision in Bowen versus Quinn, a general pardon is distinguished from a pardon based on innocence. And let me say briefly that he's been pursuing pardons based on innocence back to the Blagojevich administration. Look, anyone who's acquitted isn't found innocent either. The only thing an acquittal means is that the jury didn't find you guilty beyond a reasonable doubt. I disagree, Your Honor. Under Illinois law, I disagree, Your Honor. Under Illinois law, a general pardon implies guilt. This court said that in Bowen versus Quinn, and that it is a forgiving kind of a document rather than forgetting. And it specifically said that that pardon implies guilt. There has never been a determination by anyone that Mr. Savory is innocent. So you're position that he can't satisfy the favorable termination requirement, even if we were to, even if the panel opinion stayed in place. You're saying that this general pardon doesn't satisfy the favorable termination requirement? That's true. And that would be another argument that would have to be. But you haven't made that argument. The only thing Heck asks for is expunged by executive order. It doesn't say on grounds of innocence or on grounds of anything else in particular. It just says expunged by executive order. That happened. Judge, it's undisputed in this case, I believe, that this was not a pardon based on innocence. I know. I'm saying so what, basically? Expunged by executive order. Because the Supreme Court easily could have added on grounds of innocence. And there are circumstances in which they care about the grounds. Well, our argument is that Heck doesn't apply because of custody. And that gives these defendants the right to rely on the fact that they can finally put this matter behind them. But if that position wouldn't be sustained on remand, there would definitely be a strong argument that the difference between a pardon based on innocence and one based on a general pardon makes all the difference in the world. Judge Castillo found that. I'm not planning to make that argument in the district court. I'm sorry, Judge. I hope you're not planning to make that argument in the district court. The world still has penalties for frivolous litigation. Well, that is the precise issue that Judge Castillo addressed in the Walden case, Walden versus City of Chicago, when he said that a general pardon that the plaintiff received in 1978 was not a favorable termination of his case. But the certificate of innocence that he received in 2003 was a favorable termination of his case and triggered his right to file a lawsuit. We did make that argument in the district court with respect to the malicious prosecution claim, pointing out the difference between the general pardon and the certificate of innocence. And again, we think if the court looks through its decision in Bowen versus Quinn, it will see quite strikingly the difference between the two pardons. And I think this feeds into another aspect of the argument, the idea that after all of this litigation, after 30 years of litigation, every imaginable claim raised in the state court and in the federal court, all of them rejected. The notion that we're talking about whether there should be federal jurisdiction based on what we think a governor may have meant in a secret process that no one knows anything about. Again, in the Bowen versus Quinn case, this court said that the governor doesn't even have to address it. He can just ignore the request for a pardon. But the notion that federal jurisdiction in Section 1983 claim would somehow be dependent on the outcome and the ponderings and thoughts about what may have been. I mean, I've heard enough of this dissertation. What do you think the Supreme Court meant then when they included, in heck, expunged by executive order? That's the whole phrase, expunged by executive order. All pardon procedures perhaps could be described the way that you do, whether it's the President of the United States deciding to pardon somebody in his discretion or whether it's a governor deciding to pardon somebody. That's the nature of expungement by executive order. And the Supreme Court said, but it's an expungement. The conviction is gone. The underlying thing to which you would have attached force under either the claim or issue preclusion doctrines has gone away. And so now the slate is clean. And if there are remaining constitutional issues, somebody within two years of that date, it's not like forever. I think your forever scenario is a little exaggerated. From two years in Illinois of that time, you can bring a lawsuit. Judge, I really don't think it's exaggerated because under Illinois law, you can seek a pardon every year forever. So I don't think it's exaggerated. In terms of what the Supreme Court meant, the court didn't define that. But you're not getting it expunged every time. But to your point about expungement. So you think saying no, we're not going to grant you a pardon is one of the things the Supreme Court is talking about in the heck list? I don't see how no, we're not granting you a pardon is an expungement of the judgment. It isn't. It's a refusal to expunge the judgment. I didn't say that, and I don't think that. And I don't think it's relevant to the heck analysis one way or the other. But to answer your question about the executive expunging the record, meaning that this conviction is over, that's just not true. And again, I would direct the court to its own decision in Bowen versus Quinn. The governor in Illinois doesn't even have the power to expunge the records. Once he grants a general pardon, then the party can take that into court and ask for an expungement. But in a case where there's not a certificate of innocence, the records aren't destroyed. And it's not as if the court's saying that he's innocent. Those records are retained. Is it your position also that the pardon is not a termination in Mr. Savory's favor? Absolutely. In this case, we are. It is a termination. Or it isn't. No, no, a general pardon is not a termination in his favor. It's not the argument that we're advancing here, because that gets us back to where the cause of action hasn't accrued yet. And that, as opposed to the cause of action, is too late. And that doesn't really get us anywhere other than back in this morass where they've asked three gums. But if we remand, do you want to argue the cause of action has not yet accrued? Is that right? If we had to, that's what we would do on remand, yes. But- Interesting. OK. But you said it accrued on release before. I'm sorry, Judge. Did you initially say it accrued on release? So is this a different- The cause of action, the Section 1983 claim, accrues upon release when there's no more potential for collision with habeas corpus. But you're saying that if we stand on the panel opinion, that your new argument will be it has not yet accrued, because the pardon that he received doesn't count as a favorable termination. Well, if this court were to view the issue of custody as not important to the heck analysis, then we would be back in the district court with all of these additional arguments that, again, wouldn't relieve these defendants. We haven't talked much about the defendants. But as I said before, 30 judges have rejected all of these claims. There is no new evidence. And they don't ever get to have solace. So the only way we think that occurs, and the only way we think that's consistent with Heck and Monroe versus Pape, is for the custody to cause Heck to drop by the wayside and to cause the cause of action to accrue at that point when, as Judge St. Eve suggested, you have res judicata, collateral estoppel, those kinds of defenses. And I don't know if I adequately made the point before, but those types of defenses are so much different from Heck because Heck creates, let's not make a mistake about it, Heck creates an impenetrable bar to federal jurisdiction after that person's been released from custody. What does it have to do with federal jurisdiction? You've said that several times now. It has to do with the claims accrual, not jurisdiction. And you're right, Judge, I used the wrong phrase and I apologize for that. But it eliminates the possibility of any federal remedy, whereas if Heck is not applied and the lawsuit is filed because it accrues upon release, then a court can do as it's always done to see does res judicata apply, does collateral estoppel apply, or are there exceptions like new evidence, which is the best example of a situation where res judicata doesn't apply. And the plaintiff's position and the panel's position does not allow for that because there's no equitable exception to the Heck bar. The Heck bar says there's no cause of action that's accrued so we don't even get to equitable exceptions. The only way that- It's just hard for me to look at this as Mr. Savory doing anything other than playing this straight by the book. I mean, he did everything he possibly could on direct appeal with collateral review and then following the direction from the Supreme Court, sought a pardon and achieved it. And then following the language in Heck, thought, well, I'm gonna lodge a 1983 action. I mean, I don't know what more you could possibly ask of an individual. My answer to that would be he didn't have to do all that because he could have and should have filed the lawsuit after he was released. He would have run into res judicata and collateral estoppel. Other than reading Heck and saying, I can't, I need to try the lottery ticket option of a pardon. Well, if he read Heck and he didn't read to Walt and all the cases that followed after that, I would agree, but there are a number of cases that talked about the distinction between custody and not custody. And we think that for purposes of this analysis, if I could just briefly finish, that is, again, the only way that the court can accommodate the broad reach of section 1983 with limiting principles of federalism and comedy and still give some effect to a putative defendant's right to rely on a significantly, already significantly extended statute of limitations. Thank you, your honors. All right, thank you very much. Mr. Art, anything further? I'll give you two minutes because we ran over a bit. Thank you, your honor. Just a few points. On the point that Savory has sued both too early and too late, I would say this. The issue of whether the pardon is favorable termination is conceded for purposes of this appeal and the court need not address it, but if the court is interested, as a matter of Illinois law, this pardon expunged Savory's conviction. That's the statute cited at the bottom of the pardon, 20 ILCS 2630. It provides for obliteration of his conviction as a matter of Illinois law, which satisfies Heck's requirement of expungement by executive order. They say that no judge has made a factual finding in Savory's favor. Savory's conviction was reversed because of an error. He has litigated the Fifth Amendment claims throughout his case. He has now exonerating DNA evidence, which is a huge change from before. And can you remind me when that was found? So the exonerating DNA evidence is just before his pardon. So it's after he's exhausted all of his post-conviction remedies. So the idea that these claims are meritless is itself without merit. And the fact that they've been litigated so hard means they would be precluded if he tried to bring them here. Is there any way this court can bring an end to this litigation? Bring an end to this litigation? I mean, I suppose this court could side with their accrual rule, but we don't think that there's a basis in law to do that. What needs to happen now is his claims need to be litigated in the district court because he has finally achieved a favorable termination. They suggest that preclusion principles should apply here and that's as it should be, but that ignores that Heck is designed to avoid those preclusion principles. Heck could have decided instead of deferring accrual that all of the claims would be jurisdictionally barred or subject to preclusion and dead on arrival in federal court, but it didn't do that. Heck is establishing a favorable termination requirement to ensure that meritorious Section 1983 claims can be brought. The idea that there always has to be a federal remedy is an idea that has been rejected by the Supreme Court repeatedly and we don't think it is an argument that supports the defendant's position. McDonough has just reaffirmed that favorable termination is required, no exceptions. It's time for Savory's day in court. This court should reverse and remand for further proceedings. Thank you, Your Honors. All right. Thank you, Mr. Art. Thank you, Mr. Sotos. We appreciate your arguments and the court will take the case under advisement and we will be in recess.